IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

<table>
<tr><td>PHILADELPHIA INDEMNITY<br>INSURANCE COMPANY<br><br>      Plaintiff,<br><br>vs.<br><br>DB BOONEVILLE, LLC, and<br>ENCOMPASS HOLDINGS, LLC, and<br>DANIEL E. PETTIT, and<br>RACHAEL L. PETTIT, and<br>THE DANIEL E. PETTIT<br>REVOCABLE TRUST, and<br>THE RACHAEL L. PETTIT<br>REVOCABLE TRUST, and<br>BERNARD FELDMAN, and<br>AVA FELDMAN, and<br>THE BERNARD M. FELDMAN<br>RECOVABLE TRUST,<br><br>      Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No. 24-cv-00029<br><br><br>**COMPLAINT FOR INDEMNITY**</td></tr>
</table>

## COMPLAINT

Philadelphia Indemnity Insurance Company ("Philadelphia"), for its Complaint against DB Boonville, LLC, Encompass Holdings, LLC, Daniel Pettit, Rachael Petitt, the Daniel E. Pettit Revocable Trust, the Rachael L. Pettit Revocable Trust, Bernard Feldman, Ava Feldman, and the Bernard M. Feldman Revocable Trust (all defendants collectively referred to as "Indemnitors"), states:

## JURISDICTION AND VENUE

1.       Philadelphia is a Pennsylvania corporation with its home office and principal place of business in Bala Cynwyd, Pennsylvania and is deemed a citizen of the state of Pennsylvania.

Philadelphia is, and at all times mentioned herein was, qualified and authorized to transact business as a surety in the State of Iowa.

2.      Defendant DB Booneville, LLC ("DB Booneville") is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

3.      DB Booneville has four members:  R&D Pettit Properties, LLC, Huxley K&G, LLC,  RoBear LLC, and Mighty Mouse, LLC.

4.      R&D Pettit Properties, LLC is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

5.      None of the members of R&D Pettit Properties, Inc. are citizens of the state of Pennsylvania.

6.      Huxley K&G, LLC is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

7.      None of the members of Huxley K&G, LLC are citizens of the state of Pennsylvania.

8.      RoBear, LLC is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

9.      None of the members of RoBear, LLC are citizens of the state of Pennsylvania.

10.     Mighty Mouse, LLC is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

11.     None of the members of Mighty Mouse, LLC are citizens of the state of Pennsylvania.

12.     Defendant Encompass Holdings, LLC ("Encompass") is a limited liability company organized under the laws of the state of Iowa with its home office and principal place of business in the state of Iowa.

13.     None of the members of Encompass are citizens of the state of Pennsylvania.

14.     Defendant Daniel Pettit is an individual residing at 7395 NW 100th Street in Johnston, IA 50131 and is a citizen of the state of Iowa.

15.     The Daniel E. Pettit Revocable Trust ("Daniel's Trust") is a fiduciary trust created for estate planning purposes.

16.     Daniel Pettit is the Trustee for Daniel's Trust and is a citizen of the state of Iowa.

17.      Rachael Pettit is an individual residing at 1503 N.E. Savana, Grimes Iowa 50111 and is a citizen of the state of Iowa.

18.     Rachael L. Pettit Revocable Trust ("Rachael's Trust") is a fiduciary trust created for estate planning purposes.

19.     Rachael Pettit is the Trustee for Rachael's Trust and is a citizen of the state of Iowa.

20.     Bernard Feldman is an individual residing at 2787 Deer Creek Trail, Urbandale, Iowa 50323 and is a citizen of the state of Iowa.

21.     Ava Feldman is an individual residing at 2787 Deer Creek Trail, Urbandale, Iowa 50323 and is a citizen of the state of Iowa.

22.     The Bernard M. Feldman Revocable Trust ("Feldman Trust") is a fiduciary trust created for estate planning purposes.

23.     Bernard Feldman is the Trustee for the Feldman Trust and is a citizen of the state of Iowa.

24.     This controversy is between citizens of different states.

25.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

26.     Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(a)(1).

27.     Venue is proper in the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

28.     On or about September 20, 2022, Indemnitors executed a Developers Indemnity Agreement ("Indemnity Agreement") in favor of Philadelphia as Surety.  A copy of the Indemnity Agreement is attached hereto and incorporated herein as Exhibit 1.

29.     The Indemnity Agreement provides that the Indemnitors will indemnify, exonerate and hold harmless Philadelphia from actual or anticipated Liability & Loss as defined in the Indemnity Agreement ("Liability & Loss"):

> **3.    INDEMNITY, EXONERATION & DEMAND TO DISCHARGE BONDS:** Principals and Indemnitors agree to indemnify, exonerate and hold harmless Surety at all times from and against any actual or anticipated Liability & Loss, claims, suits, demands, liabilities and causes of action which are in any way related to any Underwriting activities, the full term of Bonds (including any continuations and renewals), and enforcing any of the covenants or conditions of this Agreement and Other Surety Agreements.  The Principals' and Indemnitors' obligations to indemnify the Surety shall also extend to any payments made by Surety under the Good Faith belief that (a) Surety was or might be liable therefor; or (b) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability.  In the event of payments by Surety, Principals and Indemnitors agree to accept vouchers, confirmation of payments through Surety's claim system, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors.  Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.  The Surety may, but shall not be obligated to, join any or all of the Principals or Indemnitors as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing

4

any such action against one or more Principals or Indemnitors. All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

30.     The Indemnity Agreement provides that the Indemnitors will deposit collateral immediately upon Philadelphia's demand to protect and collateralize Philadelphia from Liability & Loss:

**4.     POSTING OF COLLATERAL:** Principals and Indemnitors agree to deposit collateral  immediately upon demand by Surety an amount  (a) Surety deems necessary in its sole discretion at the time of the demand to protect itself from actual or anticipated Liability & Loss; (b) an amount Surety determines is sufficient to collateralize or pay any outstanding Bond obligations and all outstanding liability in connection with any Bond, including the aggregate penal sums of any Bonds where Principals and Indemnitors are unable to produce the full and complete discharge of Surety from its Bonds upon demand; and (c) all other amounts payable to Surety according to the terms and conditions of this Agreement or Other Surety Agreements. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability & Loss already incurred, as reserve to cover the amount of any potential Liability & Loss, or for any other purpose related to any Liability & Loss for which the Indemnitors would be required to collateralize, exonerate, hold harmless or indemnify Surety under the terms of this Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principal or Indemnitor, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion. In the event that the Principals and Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety.  Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph

will cause irreparable harm to as to justify injunctive relief compelling the deposit of collateral. Surety is not liable for any interest to the Indemnitors on said collateral deposited with Surety. In the event that Surety accepts collateral other than cash funds, Surety is authorized, without notice to Indemnitors to manage, borrow against, sell, foreclose, convey, or dispose of said collateral by public or private sale and shall not incur any liability to Principals or Indemnitors or others for said actions. The Indemnitors shall only be entitled to the return of any collateral or collateral proceeds which may remain upon satisfactory evidence to Surety, in its sole discretion, that its liability under any and all Bonds has been released and discharged without Loss and Indemnitors have fully complied with this Agreement.

31.     The Indemnity Agreement provides that Philadelphia has the right and authority to act as the Indemnitors' attorney-in fact to take specified actions as spelled out in the Indemnity Agreement:

7.     **ATTORNEY-IN-FACT:** Principals and Indemnitors hereby irrevocably nominate and appoint Surety, and any Person designated by Surety, as the true and lawful attorney-in-fact of Indemnitors, with full right and authority, but not the obligation, to execute on behalf of, and sign the name of, any Principal or Indemnitor to any voucher, release, satisfaction, cause of action, check, bill of sale, letter of direction and/or any other document or agreement with respect to any and all rights and property assigned and/or transferred by Principals or Indemnitors to Surety under this Agreement. Principals and Indemnitors hereby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement and/or to facilitate or implement any right granted to Surety hereunder. This power shall survive the death or incapacity of any Indemnitor.

32.     The Indemnity Agreement provides that Philadelphia is entitled to unrestricted access upon advance notice to review and copy the Indemnitors' financial information and that the Indemnitors will provide updated financial statements upon Philadelphia's request:

12.     **BOOKS & RECORDS:** Surety, including its designated agents, shall, at any and all times, have unrestricted access upon advanced notice to review and copy all Books and Records of Principals and Indemnitors, including all Books and Records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principals and Indemnitors agree to provide updated financial statements upon the Surety's request. Principals and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety

all information concerning such contracts and the work thereunder. Principals and Indemnitors also hereby authorize any bank, financial or lending institution, or depository to provide Surety with access to any bank statements or financial records or any other information or documents requested by Surety. Surety's access to such Books and Records shall continue until Surety's liability under all Bonds has been discharged and Principal and Indemnitors have satisfied all of their obligations under this Agreement. Principals and Indemnitors acknowledge that their duty to provide access to Books and Records under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to provide access with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling such access be provided.

33.    The Indemnity Agreement provides that the Indemnitors consent to the jurisdiction of any court of competent jurisdiction at Philadelphia's discretion and waive a right to a jury trial:

> **23.    CHOICE OF LAW & PROCEDURAL WAIVERS:**  As to any legal action related to this Agreement, Principals and Indemnitors consent to the jurisdiction of any court of competent jurisdiction, including the jurisdiction of any state or federal court where the Surety, Principals, or one or more of any of the Indemnitors is domiciled or doing business, at the sole discretion of the Surety. PRINCIPALS AND INDEMNITORS EXPRESSLY WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY DISPUTE WITH SURETY, WHETHER ARISING UNDER THIS AGREEMENT OR OTHERWISE AND WAIVE ANY CLAIM OR DEFENSE IN ANY SUCH ACTION BASED ON ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, FORUM NON CONVENIENS, SUBJECT MATTER JURISDICTION OR ANY SIMILAR BASIS.

34.    The Indemnity Agreement provides that Philadelphia is entitled to injunctive relief and specific performance of the Indemnitors' obligations under the Indemnity Agreement:

> **24.    EQUITABLE REMEDY:** The Indemnitors acknowledge and agree that their failure to immediately perform any obligation or requirement of this Agreement shall cause irreparable harm to Surety for which there is no adequate remedy at law and the Indemnitors shall upon Surety's demand stipulate, either directly or through the Attorney- in-Fact provision of this Agreement, that Surety is entitled to all manner of equitable relief including, without limitation, specific performance and injunctive relief in addition to the relief otherwise afforded by this Agreement or at law.

35.     In reliance upon the Indemnity Agreement, Philadelphia issued Subdivision Bonds, Bond Nos. PB02315100001 and PB02316100002 ("Bonds") in favor of the City of West Des Moines, Iowa (the "City"), as obligee, on behalf of DB Booneville, as principal, with respect to the subdivision project known as Village at Sugar Creek Plat 1 in West Des Moines, Iowa ("Project").

36.     The City made demand on Philadelphia for $3,410,515, the full penal sums of the Bonds, claiming that DB Booneville failed to perform certain subdivision improvements for the Project the City claims are covered by the Bonds and that the costs of performing the work exceeds the amount of the Bonds.

37.     On August 21, 2023, Philadelphia demanded that the Indemnitors deposit the sum of $3,410,515.00, the amount of the City's demand, with the caveat that the demand would be withdrawn if the Indemnitors provided Philadelphia with documentation that the City's claims had been resolved and the City's withdrawal of its claims. A copy of Philadelphia's August 21, 2023 demand is attached hereto and incorporated herein as Exhibit 2.

38.     Indemnitors failed to deposit with Philadelphia any amount or provide Philadelphia with documentation that the City's claims on the Bonds have been withdrawn within the time frame set forth in Philadelphia's August 21, 2023 demand.

39.     Philadelphia is investigating and responding to the claims on the Bonds in order to discharge its obligations in a manner consistent with the Bonds and governing law. Philadelphia has retained counsel in conjunction with the investigation and litigation of the claims on the Bonds.

40.     On November 21, 2023, the City filed a lawsuit entitled *City of West Des Moines, Iowa v. Philadelphia Indemnity Insurance Company*, which is pending before the United States

District Court for the Southern District of Iowa, seeking the full $3,410,515.00 penal sums of the Bonds.

41.     As a result of the Indemnitors' failure to deposit collateral as demanded by Philadelphia and to indemnify and hold harmless Philadelphia from the City's claims on the Bonds, Philadelphia has and continues to incur Losses & Expenses as defined in the Indemnity Agreement.

42.     Philadelphia faces losses associated with the existing claims on the Bonds and is entitled to the Indemnitors' performance of their obligations under the Indemnity Agreement.

## COUNT I
(Specific Performance)

43.     Philadelphia incorporates paragraphs 1 through 42 of its Complaint as if fully set forth herein.

44.     The Indemnitors' agreement to the terms of the Indemnity Agreement served as partial consideration for Philadelphia to issue the Bonds on behalf of DB Booneville.

45.     Despite Philadelphia's requests, the Indemnitors failed and refused to perform their obligations under the Indemnity Agreement.

46.     Philadelphia has been damaged by the Indemnitors' material breach of the Indemnity Agreement and their failure to defend Philadelphia from the claims made against the Bonds, indemnify Philadelphia for all Liability & Losses, and provide cash collateral to Philadelphia in the amount of $3,410,515.00.

WHEREFORE, on Count I of its Complaint, Philadelphia prays for an order requiring the Indemnitors to specifically perform their obligations under the Indemnity Agreement by:

(a) Defending and holding harmless Philadelphia from the claims made against the Bonds;

(b) Indemnifying Philadelphia for all Liability & Losses;

(c) Providing cash collateral to Philadelphia in the amount of $3,410,515.00 to be used by Philadelphia in accordance with the Indemnity Agreement;

(d) Providing Philadelphia with updated financial statements and access to their respective Books and Records;

(e) Ordering the Indemnitors to pay Philadelphia's costs, including attorneys' fees incurred herein; and

(f) Awarding such other and further relief as the Court deems just and proper.

## <u>COUNT II</u>
(Injunctive Relief)

47.     Philadelphia incorporates paragraphs 1 through 46 of its Complaint as if fully set forth herein.

48.     Given their agreement to do so in the Indemnity Agreement, the Indemnitors individually and/or collectively, should be immediately required and ordered to provide Philadelphia with cash collateral in the amount of $3,410,515.00 to be used in accordance with the Indemnity Agreement and to provide Philadelphia with updated financial statements and Books and Records.

49.     The Indemnitors should also be enjoined and restrained from selling, transferring, disposing, encumbering or impairing any of their assets and property unless and until they have provided Philadelphia with cash collateral of $3,410,515.00 to be used in accordance with the Indemnity Agreement.

50.     Philadelphia does not have an adequate remedy at law and will suffer irreparable harm without injunctive relief because unless the terms of the Indemnity Agreement are immediately enforced, its rights will be impaired and nullified in the following respects:

(a) Philadelphia will not be adequately secured for its obligations under the Bonds;

(b) The damage to Philadelphia resulting from the Indemnitors' breach of their obligations as set forth above is currently not liquidated in that the Liability & Loss is not yet fully ascertainable and is continuing; and

(c) The Indemnitors may transfer or dissipate all their assets from being used to protect, exonerate and indemnify Philadelphia from all Liability & Loss; and

(d) Philadelphia will be denied information and documents to assist it in mitigating its Liability & Losses.

51.     In the Indemnity Agreement, the Indemnitors acknowledged and agreed that their failure to deposit with Philadelphia the sum demanded as collateral would leave Philadelphia without an adequate remedy at law and cause irreparable harm to Philadelphia justifying injunctive relief.

52.     In the Indemnity Agreement, Indemnitors acknowledged and agreed that Philadelphia is entitled to equitable relief (including specific performance and injunctive relief) for the performance of the Indemnitors' obligations under the Indemnity Agreement.

WHEREFORE, on Count II of its Complaint, Philadelphia prays for an order:

(a) Ordering the Indemnitors to indemnify and exonerate Philadelphia for all Liability & Loss as a result of having issued the Bonds;

(b) Directing the Indemnitors to deposit cash collateral with Philadelphia in the amount of $3,410,515.00 to be used in accordance with the terms of the Indemnity Agreement;

(c) Prohibiting the Indemnitors from selling, transferring, disposing, encumbering or impairing their assets and property until they have provided Philadelphia with cash collateral in the amount of $3,410,515.00;

(d) Directing the Indemnitors to provide Philadelphia with updated financial statements and other Books and Records regarding their assets and financial condition;

(e) Ordering the Indemnitors to pay Philadelphia's costs, including attorneys' fees incurred herein; and

(f) Awarding such other and further relief as the Court deems just and proper.

## COUNT III
(Breach of Contract)

53.     Philadelphia incorporates paragraphs 1 through 46 of its Complaint as if fully set forth herein.

54.     Pursuant to the Indemnity Agreement, each of the Indemnitors agreed to exonerate, indemnify, and keep indemnified Philadelphia from and against Liability & Loss as defined in the Indemnity Agreement by reason of Philadelphia underwriting of Bonds or as a result of the failure or inability of Indemnitors to comply with obligations under the Bonds, bonded obligations, or the Indemnity Agreement.

55.     Indemnitors breached the Indemnity Agreement by failing to indemnify Philadelphia for Liability & Loss as defined in the Indemnity Agreement.

56.     Philadelphia has incurred and will continue to incur Liability & Loss as a result of its issuance of the Bonds, DB Booneville's alleged defaults under the Bonds, and Indemnitors' past and ongoing failure to comply with the Indemnity Agreement.

57.     The sums sought by Philadelphia are for liquated amounts which entitle it to prejudgment interest thereon from the respective dates of payment.

58.     Pursuant to the Indemnity Agreement, Philadelphia is also entitled to recover from Indemnitors any additional amounts it is required to or deems necessary or expedient to pay by

virtue of having issued the Bonds and any additional amounts for Liability & Loss which Philadelphia pays after the date of this filing by reason of having executed the Bonds and in enforcing the Indemnity Agreement.

WHEREFORE, on Count III of its Complaint, Philadelphia prays for judgment against Indemnitors jointly and severally for its Liability & Loss as defined in the Indemnity Agreement, plus pre-judgment and post-judgment interest on those amounts from the respective dates of payment and such other and further relief as the Court deems just and proper.

*/s/ Jon A. Vasey*
Jon A. Vasey, AT0008142
ELVERSON VASEY
700 Second Avenue
Des Moines, IA  50309
Telephone:  515-243-1914
Facsimile:  515-243-2235
jon.vasey@elversonlaw.com


*/s/ Carol Z. Smith*
Carol Z. Smith, MO #37836
DYSART TAYLOR McMONIGLE  BRUMITT & WILCOX, P.C.
700 W. 47th Street, Suite 410
Kansas City, MO  64112
(816) 931-2700
(816) 931-7377 – FAX
csmith@dysarttaylor.com

ATTORNEYS FOR PLAINTIFF PHILADELPHIA INDMENITY INSURANCE COMPANY